IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02604-CMA-KLM

MARTINES PALMERIO CONSTRUCTION, LLC, a Colorado limited liability company,

    Plaintiff,

v.

THE SOUTHWEST REGIONAL COUNCIL OF CARPENTERS,
THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, a foreign non-profit corporation, and
MILLWRIGHT AND MACHINERY ERECTOR LOCAL 1607,

    Defendants.

---

**ORDER DENYING PLAINTIFF'S EMERGENCY MOTION TO REMAND**
_____

This matter is before the Court on Plaintiff's Emergency Motion to Remand this case to state court. (Doc. # 6.) Based on the doctrine of complete preemption, the Court concludes that it has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 and therefore denies the motion.[1]

## I.    BACKGROUND

Plaintiff Martines Palmeiro Construction, LLC (MPC) is a Colorado limited liability construction company that has been contractually retained by Industry Apartments, LLC to construct a building known as the Industry Apartments (the Project), located in

---

[1] In light of this conclusion, the Court need not address Defendants' argument with respect to the Federal Aviation Administration rules.

Denver, Colorado. (Doc. # 3 at ¶ 8.) Construction on the Project is currently ongoing. (*Id.* at ¶ 14.)

Defendants Southwest Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, and Millwright Erectors Local 1607 are labor unions or organizations affiliated with labor unions that represent carpenters, who are often employed by subcontractors to general managers. (*Id.* at ¶ 15.) According to the Complaint, Defendants believe that certain construction industry businesses within Colorado, including Plaintiff, are committing labor violations, and Defendants are therefore engaged in a public campaign against Plaintiff. (*Id.* at ¶ 17.)

Plaintiff alleges that, since September 26, 2017, Defendants have trespassed on the Project site and loitered on public streets and private property nearby. (*Id.* at ¶ 18.) Plaintiff further contends that, while trespassing, Defendants' representatives have harassed Plaintiff's employees and subcontractors and interfered with ongoing operations on the site. (*Id.* at ¶ 25.) Plaintiff alleges that Defendants' harassing and intimidating conduct has caused Plaintiff's employees and subcontractors to leave the site and refuse to return, disrupting the Project and damaging Plaintiff's reputation.

Based on these factual allegations, Plaintiff filed a Complaint in Denver County District Court on October 27, 2017. (*Id.*) Plaintiff pleads for relief under two legal theories: trespass and tortious interference with contract. (*Id.* at 5–6.) Defendants removed the action to this Court on the grounds that the doctrine of complete preemption requires that Plaintiff's tortious interference claim be construed to assert a

Denver, Colorado. (Doc. # 3 at ¶ 8.) Construction on the Project is currently ongoing. (*Id.* at ¶ 14.)

Defendants Southwest Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, and Millwright Erectors Local 1607 are labor unions or organizations affiliated with labor unions that represent carpenters, who are often employed by subcontractors to general managers. (*Id.* at ¶ 15.) According to the Complaint, Defendants believe that certain construction industry businesses within Colorado, including Plaintiff, are committing labor violations, and Defendants are therefore engaged in a public campaign against Plaintiff. (*Id.* at ¶ 17.)

Plaintiff alleges that, since September 26, 2017, Defendants have trespassed on the Project site and loitered on public streets and private property nearby. (*Id.* at ¶ 18.) Plaintiff further contends that, while trespassing, Defendants' representatives have harassed Plaintiff's employees and subcontractors and interfered with ongoing operations on the site. (*Id.* at ¶ 25.) Plaintiff alleges that Defendants' harassing and intimidating conduct has caused Plaintiff's employees and subcontractors to leave the site and refuse to return, disrupting the Project and damaging Plaintiff's reputation.

Based on these factual allegations, Plaintiff filed a Complaint in Denver County District Court on October 27, 2017. (*Id.*) Plaintiff pleads for relief under two legal theories: trespass and tortious interference with contract. (*Id.* at 5–6.) Defendants removed the action to this Court on the grounds that the doctrine of complete preemption requires that Plaintiff's tortious interference claim be construed to assert a

federal cause of action.  (Doc. # 1.)  Plaintiff thereafter filed the instant motion to remand. (Doc. # 6.)

## II.     DISCUSSION

Federal district courts have limited jurisdiction, possessing "only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  An action may be removed from state court to federal court under 28 U.S.C. § 1441 when the federal district court has original jurisdiction over it.  The removing party bears the burden of demonstrating federal subject matter jurisdiction over the action.  *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014).

According to Defendants, subject matter jurisdiction here is based on the existence of a federal question under 28 U.S.C. § 1331.  Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  "The presence or absence of federal question is governed by the well-pleaded complaint rule, which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded Complaint."  *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).  Typically, then, federal question jurisdiction will lie only if the complaint pleads a federal cause of action.  *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 808 (1986); *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149 (1908).  A defense based on federal law, including the defense of preemption, is not enough to make the case "arise under" federal law.  *Mottley*, 211 U.S. at 152.  Under the "artful pleading"

3

doctrine, however, a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22 (1983).

The Complaint in this action asserts only state law claims. Under the well-pleaded complaint rule, then, the Court would normally conclude that no federal question jurisdiction exists. Defendants, however, argue that removal of this action is supported by the "complete preemption doctrine," a corollary or exception to the well-pleaded complaint rule. *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996). Defendants specifically maintain that Plaintiff's claim for tortious interference with contract falls within the purview of § 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 187, a statute which they argue triggers the application of the "complete preemption doctrine" and supports federal jurisdiction.

To evaluate Defendants' complete preemption argument, the Court first reviews the scope of LMRA § 303. Section 303 creates a private cause of action that may be brought by any person injured in his business or property as a result of a labor union's unfair labor practices as defined by the National Labor Relations Act (NLRA) § 8(b)(4). 29 U.S.C. § 187. The NLRA § 8(b)(4), in turn, identifies various activities that constitute an unlawful "secondary boycott." It specifically prohibits, insofar as it relates to the allegations in this suit, a labor union from threatening, coercing, or restraining a person engaged in commerce or in an industry affecting commerce with the object of forcing that person to cease doing business with another. 29 U.S.C. § 158(b)(4)(ii)(B); *see also NLRB v. Retail Store Emp. Union, Local 1001,* 447 U.S. 607, 611–12 (1980). This

4

conduct is known as an unlawful "secondary boycott" because it is not aimed at the primary employer — here, Plaintiff — but rather at a secondary employer — Plaintiff's subcontractors. *Id.,* 447 U.S. at 612.

Defendants argue that the harassing and intimidating conduct, alleged to be causing interference with Plaintiff's contracts with Industry Apartments and various subcontractors, is precisely the kind of "unfair labor practice" addressed by LMRA § 303. The Court agrees that these allegations fall within the purview of LMRA § 303.[2] See Overstreet v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506, 409 F.3d 1199, 1213 (9th Cir. 2005) (stating that conduct that rises to the level of intimidation to "threaten coerce, or restrain" potential customers could fall under NLRA § 8(b)(4)(ii)(B)); Silverman v. Verrelli, No. CIV.A. 11-6576 SRC, 2012 WL 395665, at *4 (D.N.J. Feb. 7, 2012) (considering whether claims that union defendants made coercive statements to induce secondary employees to cease doing business with a primary employer arose under § 303 of the NLRA). However, the mere fact that Plaintiff's claims fall within the purview of LMRA § 303, does not, by itself, suffice to confer federal jurisdiction where the claims pled do not arise under federal law. The Court therefore turns to examine whether Plaintiff's tortious interference claim is completely preempted by the LMRA § 303.

The complete preemption doctrine provides that "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64

---

[2] The Court notes that Plaintiff does not appear to dispute that its claims fall within the ambit of LMRA § 303.

(1987)). The doctrine applies where "the preemptive force of a statute is so extraordinary that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393 (quoting *Metro. Life Ins.,* 481 U.S. at 65).

The Supreme Court has expressly recognized the applicability of the extraordinary complete preemption doctrine in only a few areas of the law, including, as pertinent here, suits that in substance state a claim under LMRA § 301 for violation of a collective bargaining agreement. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968). The Supreme Court has not, however, addressed whether the complete preemption doctrine applies to suits that fall under LMRA § 303. Nor has the Tenth Circuit reached the issue.

Cases from other jurisdictions, including *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798 (7th Cir. 2009), though not binding on this Court, provide guidance. In *Smart*, the Seventh Circuit expressly held that LMRA § 303, like the federal causes of action created by LMRA § 301, completely preempts state law claims against labor unions and thus supports the removability of such claims under 28 U.S.C. § 1441. *Smart,* 562 F.3d at 808. The *Smart* plaintiff was a proprietor of a non-union company, contracted to perform electrical work in connection with the construction of a sports complex. *Id.* at 801. The defendant labor union, according to the plaintiff, threatened to shut down the project if the sports complex owner did not terminate its relationship with the plaintiff in favor of a company employing union workers. *Id.*

6

On appeal of the district court's order dismissing the plaintiff's claims, the Seventh Circuit *sua sponte* addressed the issue of subject matter jurisdiction and complete preemption. *Id.* at 802–03. Endeavoring to discern whether Congress intended § 303 to have the extraordinary preemptive power required to re-cast state claims as arising under a federal cause of action, the *Smart* court's analysis began with the well-established principle that the complete preemption doctrine applies to claims governed by LMRA § 301. *Id.* at 807–08; *Avco Corp.*, 390 U.S. 557. The court then observed the similarities between the jurisdictional provisions in § 301 and § 303 as implicating the interest of Congress in the "uniform treatment of labor-management relations." *Smart,* 562 F.3d at 808. After a lengthy comparison of the statutes and discussion of Congressional intent, the panel then concluded that LMRA § 303 *"completely* preempts state-law claims related to secondary boycott activities described in section 158(b)(4), [and thus] provides an exclusive federal cause of action for the redress of such illegal activity." *Id.*

The Supreme Court's decision in In *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 253 (1964), further supports application of the complete preemption doctrine to certain actions under LMRA § 303. Though *Morton* did not directly address jurisdictional issues, its holding concerning the preemption of the plaintiff's common law claims allowed the Court to express its views on the all-encompassing nature of LMRA § 303 in the area of secondary boycotts by a labor union. The *Morton* Court held that Congress had carefully crafted § 303 to occupy the field of unlawful labor union conduct in connection with secondary boycotts and, in so

7

doing, closed the field to state regulation. *Id.* at 258–59. The Supreme Court concluded that the strength and coverage of § 303 demanded that any state law claim dealing with secondary boycotts must yield to federal law, even when the state law addresses conduct not expressly covered by § 303. *Id.* at 260–61 ("In short, this is an area of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its sources in those statutes, rather than by local law.").

Moreover, following *Morton*, various courts have likewise found preemption by § 303 of state causes of action for tortious interference of contract. *See, e.g., BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of Am.*, AFL–CIO, 90 F.3d 1318, 1327–30 (8th Cir.1996) (holding that plaintiff's claim under Arkansas law for tortious interference with contractual relations was preempted by § 303); *Iodice v. Calabrese*, 512 F.2d 383, 390 (2d Cir. 1975) (holding that claim under New York law for tortious interference with contractual relations was preempted by § 303); *Hennepin Broad. Assocs., Inc. v. NLRB*, 408 F.Supp. 932 (D. Minn. 1975) (holding that Minnesota claims for tortious interference with business relations and contracts was preempted by § 303); *cf. Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 959 (9th Cir. 2014) (state law claims for property-based torts, rather than economic causes of action, are not fully preempted).

Finding the above-mentioned legal authorities persuasive, this Court concludes that Plaintiff's state law claim of tortious interference with contract, which this Court has already concluded concerns secondary boycott activities, must be deemed to arise

8

under § 303. The complete preemption doctrine therefore applies, supporting the removal of this case based on federal question jurisdiction and the denial of Plaintiff's motion to remand.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand (Doc. # 6). In the interests of justice, the Court grants Plaintiff thirty days in which to amend its Complaint, pursuant to Federal Rule of Civil Procedure 15, to assert a claim for relief under LMRA § 303. *See Smart,* 562 F.3d at 809 (directing that on remand to the district court, the plaintiff be permitted an opportunity to amend his complaint to seek relief under the governing federal statute, rather than forcing him to continue with a preempted, and therefore patently not viable claim.)

DATED: November 21, 2017        BY THE COURT:

*[signature]*

CHRISTINE M. ARGUELLO
United States District Judge